

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN  DIVISION

SUSAN PINA,                              )      No. ED CV 13-1806-PLA
                                         )
                Plaintiff,               )
                                         )
        v.                               )      **MEMORANDUM OPINION AND ORDER**
                                         )
CAROLYN W. COLVIN,                       )
ACTING COMMISSIONER OF SOCIAL            )
SECURITY ADMINISTRATION,                 )
                                         )
                Defendant.               )
_____)

**I.**

**PROCEEDINGS**

        Plaintiff filed this action on October 10, 2013, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 29, 2013, and November 1, 2013.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 22, 2014, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## __BACKGROUND__

Plaintiff was born on March 4, 1972. [Administrative Record ("AR") at 48-49.] She has at least a high school education [AR at 19, 143], and has past relevant work experience as a coordinator at a car auction, auto auction driver, child care worker, warehouse loader, and cashier/checker. [AR at 18-19, 30-33, 144, 182.]

On May 26, 2010, and June 7, 2010, plaintiff filed applications for Supplemental Security Income payments and Disability Insurance Benefits, respectively, alleging that she has been unable to work since July 19, 2009. [AR at 9, 117-26.] After her applications were denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 55-59, 63-67, 69-70.] A hearing was held on May 22, 2012, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 26-47.] A vocational expert ("VE") also testified. [AR at 44-45.] On June 7, 2012, the ALJ determined that plaintiff was not disabled. [AR at 9-21.] Plaintiff subsequently requested review of the ALJ's decision with the Appeals Council. [AR at 5.] When the Appeals Council denied plaintiff's request for review on August 7, 2013, the ALJ's decision became the final decision of the Commissioner. [AR at 1-3]; see Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam). This action followed.

## III.

## __STANDARD OF REVIEW__

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

2

1998) (same).    When determining whether substantial evidence exists to support the

Commissioner's decision, the Court examines the administrative record as a whole, considering

adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001);

see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must

consider the entire record as a whole and may not affirm simply by isolating a specific quantum

of supporting evidence") (internal quotation marks and citation omitted).   "Where evidence is

susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan,

528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin.,

466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the

ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ").


**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

to engage in any substantial gainful activity owing to a physical or mental impairment that is

expected to result in death or which has lasted or is expected to last for a continuous period of at

least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

1992).


**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

substantial gainful activity, the second step requires the Commissioner to determine whether the

claimant has a "severe" impairment or combination of impairments significantly limiting her ability

to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

1  If the claimant has a "severe" impairment or combination of impairments, the third step requires

2  the Commissioner to determine whether the impairment or combination of impairments meets or

3  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

4  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

5  If the claimant's impairment or combination of impairments does not meet or equal an impairment

6  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

7  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

8  and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform

9  past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

10  case of disability is established.  The Commissioner then bears the burden of establishing that

11  the claimant is not disabled, because she can perform other substantial gainful work available

12  in the national economy.  The determination of this issue comprises the fifth and final step in the

13  sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966

14  F.2d at 1257.

15

16  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

17        In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial

18  gainful activity since her alleged disability onset date, July 19, 2009.[1]  [AR at 11.]  At step two, the

19  ALJ concluded that plaintiff has the severe impairments of degenerative disk disease and

20  scoliosis.  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a

21  combination of impairments that meets or medically equals any of the impairments in the Listings.[2]

22  [AR at 14.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3]

23  ─────────────────────

24      [1]   The ALJ determined that the plaintiff meets the insured status requirements of the Social
      Security Act through December 31, 2014.  [AR at 11.]

25      [2]   See 20 C.F.R. pt. 404, subpt. P, app. 1.

26      [3]   RFC is what a claimant can still do despite existing exertional and nonexertional
27  limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps
    three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
28                                                                                          (continued...)

4

to perform less than a full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).[4]  [Id.]  Specifically, the ALJ determined:

> [plaintiff] can lift and/or carry up to ten pounds frequently or occasionally; [plaintiff] can stand and/or walk four hours in an eight-hour workday, in one half hour intervals only; [plaintiff] can sit six hours in an eight-hour workday with normal breaks; [plaintiff] cannot work around unprotected heights or vibration; [plaintiff] cannot walk on uneven ground; [plaintiff] cannot climb ladders, but she can occasionally climb stairs and ramps; [plaintiff] can occasionally stoop and bend; [plaintiff] cannot have intense, sustained verbal communication with the public, coworkers, or supervisors; and [plaintiff] cannot perform fast-paced work, such as conveyor belt or piece work.

[Id.]  At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff is unable to perform any past relevant work.  [AR at 18-19.]  At step five, based on plaintiff's RFC, vocational factors and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff could perform, including as an addressor, cutter and paster of press clippings, and telephone clerk.  [AR at 19-20.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from July 19, 2009, through the date of the decision.  [AR at 9, 20.]

---

[3](...continued)

the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[4]    "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a) & 416.967(a).

**V.**

**THE ALJ'S DECISION**

In the Joint Stipulation, plaintiff argues that: (1) the ALJ improperly gave little weight to the opinion of her treating physician; and (2) the ALJ improperly gave little weight to the report from plaintiff's daughter.  [JS at 2-10, 16-19, 21.]  For the reasons discussed below, the Court agrees with plaintiff and remands the matter for further proceedings.

**A.    EVALUATION OF MEDICAL EVIDENCE**

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting her treating physician's opinion.  [JS at 2-10, 16.]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians."  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at 830; Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons."  Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Carmickle, 533 F.3d at 1164 (internal quotation marks and citation omitted); Ryan, 528 F.3d at 1198.  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick, 157 F.3d at 725.  The ALJ "must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct."  Id.

On August 20, 2009, a radiologist reported to Dr. Gail Marks that a lumbar spine x-ray revealed degenerative changes of plaintiff's lumbar spine with rotoscoliosis at approximately the L4-5 level.  [AR at 184.]

In a treatment note dated September 1, 2009, Nurse Practitioner ("NP") Lan Nguyen indicated that she conducted a physical exam of plaintiff and assessed her with "chronic lower back pain" and "obesity."  [AR at 200-01.]

According to a treatment note from Arrowhead Regional Medical Center ("Arrowhead") dated December 22, 2009, an MRI of plaintiff's lumbar spine revealed "[m]ultilevel degenerative disc disease without spinal canal compromise," "mild bilateral neural foraminal narrowing at the L5-S1 level," and a "small posterior disc margin annular tear at the L4-5 disc."  [AR at 189.]

On June 22, 2010, Dr. Susanna Oh completed a neurosurgical report and assessed plaintiff with "multilevel degenerative disk disease, multilevel facet hypertrophy with a small posterior annular tear at the L4-L5 disks, and bilateral neural foraminal narrowing at the L5-S1 level."  [AR at 242-44.]  A physical examination revealed, among other things, that plaintiff's gait was steady but slow due to pain, and that she was "mildly tender to palpation on the left."  [AR at 243.]

On September 13, 2010, Dr. R. Jacobs, a nonexamining State agency consultant,  opined that plaintiff can occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk (with normal breaks) for about six hours in an eight-hour workday, and sit (with normal breaks) for a total of about six hours in an eight-hour workday.  [AR at 226.]  Dr. Jacobs also opined that plaintiff cannot use ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, kneel, crouch, and crawl.  [AR at 227.]  The State agency medical consultant did not review plaintiff's treating physician's statements, examining source statements, or the hearing testimony, when forming his opinion.  [AR at 17-18, 229.]

Dr. James Evans treated plaintiff on an "as needed" basis for a period of seven months, between September 2009 and March 2010.  [AR at 193.]  Specifically, the record reflects that Dr. Evans completed reports on plaintiff's behalf on three occasions.  On an unknown date after September 1, 2009, Dr. Evans completed a form for California's Employment Development Department in which he reported that plaintiff had chronic low back pain and was unable to

1  perform activities of daily living. [AR at 193.] Dr. Evans stated that a lumbar spine x-ray revealed

2  scoliosis. [Id.] He estimated that plaintiff would be able to return to her regular work on March 1,

3  2010. [Id.] In a report dated March 8, 2010, Dr. Evans diagnosed plaintiff with degenerative disk

4  disease. [AR at 194.]  He stated that plaintiff had "severe low back pain," her range of motion "is

5  decreased," and she "[r]equires assistance with ambulation." [Id.]  Dr. Evans estimated that

6  plaintiff would be able to perform her customary work on June 1, 2010. [Id.] On March 26, 2010,

7  Dr. Evans completed another form for the Employment Development Department in which he

8  opined that plaintiff "is unable to lift more than [five pounds]," "cannot push or pull," and cannot

9  "stand for more than [one hour] at a time." [AR at 195.] He indicated that plaintiff had been unable

10  to perform her regular work as of September 1, 2009, and estimated that plaintiff would be able

11  to resume her regular work on July 1, 2010. [AR at 195-96.]

12       On September 23, 2010, plaintiff underwent a medial branch block under fluoroscopic

13  control. [AR at 235.]

14       In his decision, the ALJ gave "significant, but not great, weight to the opinion of the State

15  agency physical medical consultants" and gave "little weight" to Dr. Evans' opinion. [AR at 17-18.]

16  The ALJ discredited Dr. Evans' opinion for the following reasons: (1) the opinion "is not supported

17  by objective evidence"; (2) the opinion is "inconsistent with the record as a whole"; (3) the issue

18  of disability is "reserved to the Commissioner"; (4) "it is not clear that the doctor was familiar with

19  the definition of 'disability' contained in the Social Security Act and regulations"; (5) "Dr. Evans[']

20  actual treatment of [plaintiff] had been over a relatively brief period and as a result he did not have

21  a longitudinal picture of [plaintiff's] medical condition"; and (6) Dr. Evans "did not opine that

22  [plaintiff] would be limited for a period of twelve-continuous months." [AR at 18.]

23       Under the circumstances, none of the reasons provided by the ALJ for giving "little weight"

24  to the opinion of Dr. Evans is legally sufficient and/or supported by substantial evidence.  [AR at

25  17-18.]  As an initial matter, even assuming the opinions of the nonexamining physicians

26  constituted "substantial evidence," the Social Security regulations still require deference to the

27

28

1  treating physician's opinions.  See 20 C.F.R. § 404.1527; Social Security Ruling ("SSR") 96-2p,[5]

2  1996 WL 374188, at *1 ("A finding that a treating source's medical opinion is not entitled to

3  controlling weight does not mean that the opinion is rejected."); Orn v. Astrue, 495 F.3d 625, 633

4  (9th Cir. 2007) ("Even if [the examining physician's] opinion were 'substantial evidence,' §

5  404.1527 still requires deference to the treating physicians' opinions"). Under 20 C.F.R. §§

6  404.1527 and 416.927, the Commissioner looks at the following factors in determining the weight

7  to be given to the treating physician's opinion: (1) the "[l]ength of the treatment relationship and

8  the frequency of examination[,]" and (2) the "[n]ature and extent of the treatment relationship[]"

9  between the patient and the treating physician.  Id. at §§ 404.1527(c)(2)(i)-(ii) & 416.927(c)(2)(i)-

10 (ii).  "Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the

11 treating physician, include the amount of relevant evidence that supports the opinion and the

12 quality of the explanation provided; the consistency of the medical opinion with the record as a

13 whole; the specialty of the physician providing the opinion; and '[o]ther factors' such as the degree

14 of understanding a physician has of the Administration's 'disability programs and their evidentiary

15 requirements' and the degree of his or her familiarity with other information in the case record."

16 Orn, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(c)(3)-(6)) (brackets in original).

17        Under the factors set forth in § 404.1527, the ALJ erred in affording only little weight to the

18 opinion of plaintiff's treating physician.  For example, the relationship plaintiff had with Dr. Evans

19 provides a "unique perspective" on plaintiff's condition.  See 20 C.F.R. § 404.1527(c)(2); Orn, 495

20 F.3d at 633.  In addition, the nature and extent of Dr. Evans' relationship with plaintiff adds

21 significant weight to his opinion.  See 20 C.F.R. § 404.1527(c)(2)(i)-(ii); Orn, 495 F.3d at 633.  Dr.

22 Evans maintained a treating relationship with plaintiff for approximately seven months.  [See AR

23 at 193, 195.]

24

25        [5]  "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's
26 implementing regulations and the agency's policies. SSRs are binding on all components of the
   [Social Security Administration]. SSRs do not have the force of law. However, because they
27 represent the Commissioner's interpretation of the agency's regulations, we give them some
   deference. We will not defer to SSRs if they are inconsistent with the statute or regulations."
28 Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

9

1    The "[s]upportability" of plaintiff's treating physician's opinions adds further weight. See 20

2    C.F.R. § 404.1527(c)(3).  When viewed in its entirety, the records from Dr. Evans and NP Nguyen[6]

3    provide ample support for Dr. Evans' opinions.  For example, Dr. Evans' medical reports support

4    his opinion regarding plaintiff's functional limitations.  [AR at 193 (Dr. Evans reported that a lumbar

5    spine x-ray showed scoliosis, plaintiff had chronic lower back pain, and was unable to perform

6    activities of daily living), 194 (Dr. Evans indicated that plaintiff's range of motion is decreased, and

7    she required assistance with ambulation), 200-01 (NP Nguyen assessed plaintiff and reported that

8    her gait was slow, her left hip appeared higher than her right hip, and she was unable to tolerate

9    straight leg test).]

10    In addition, the "consistency" of plaintiff's treating physician's opinion with the record as a

11    whole merits additional weight for Dr. Evans' opinions.  See 20 C.F.R. § 404.1527(c)(4); Orn, 495

12    F.3d at 634.  Plaintiff's treating physician's opinion is supported by other medical evidence in the

13    record.  [See, e.g., AR at 184 (radiologist note to Dr. Marks finding plaintiff has degenerative

14    changes in her lumbar spine with  rotoscoliosis), 199 (treatment note from NP Nguyen assessing

15    plaintiff with chronic lower back pain and scoliosis), 198 (treatment note from NP Nguyen

16    assessing plaintiff with chronic lower back pain and scoliosis).]

17    Moreover, the Court finds that the ALJ failed to provide specific and legitimate reasons for

18    rejecting the opinions of plaintiff's treating physician.  First, the ALJ's finding that plaintiff's treating

19    physician's opinion is not supported by objective medical evidence misstates the record and is not

20    supported by substantial evidence.  [AR at 18]; see Reddick, 157 F.3d at 722-24 (ALJ's "findings

21    were unsupported by substantial evidence based on the record as a whole" when "[i]n essence,

22    the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all

23    parts of the testimony and reports [and h]is paraphrasing of record material is not entirely accurate

24    regarding the content or tone of the record."); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.

25    1984) ("Although it is within the power of the [Commissioner] to make findings . . . and to weigh

26

27

28    _____

     [6]    Dr. Evans and NP Nguyen worked together as a treatment team at Arrowhead.  See
     discussion, infra, at 13.

conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (citation omitted).   For example, as discussed above, Dr. Evans' reports document plaintiff's scoliosis, her inability to lift more than five pounds, her decreased range of motion, and her need for "assistance with ambulation."  [AR at 193-96.]  Similarly, as noted above, the opinions of NP Nguyen and an interpreting radiologist further support Dr. Evans' opinion.  [See, e.g., AR at 184, 188, 198-201, 209-10, 213.]

Second, the ALJ erred in finding that Dr. Evans' opinion is inconsistent with the medical evidence.  The ALJ interpreted plaintiff's statement, "A gallon of milk is heavy for me" [AR at 42], as an admission that plaintiff is in fact capable of lifting a gallon of milk, which he found to be inconsistent with Dr. Evans' opinion that plaintiff is "unable to life more than five pounds."[7]  [AR at 18.] This is the only example the ALJ provided to support his contention that Dr. Evans' opinion is inconsistent with the record as a whole.  [AR at 18; see, e.g., AR at 195.]  However, the ALJ also determined that plaintiff is only partially credible.[8]  The ALJ does not explain why plaintiff's testimony should be credited for the purpose of finding an inconsistency with Dr. Evans' opinion and rejected for the purpose of an RFC determination, and as such, he selectively chose only certain evidence in the record to reach his desired outcome.  See Carradine v. Barnhart, 360 F.3d 751, 755 (7th Cir. 2004) ("[I]f she was testifying truthfully and against her interest about her daily activities, why did the administrative law judge think she was lying about her pain?"); see also Reddick,157 F.3d at 722-23 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); Gallant, 753 F.2d at 1456; see also Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (While the ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony," he cannot simply

---

[7]   Although plaintiff's statement is ambiguous, the ALJ's interpretation should prevail. "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Ryan, 528 F.3d at 1198 (internal citations omitted).

[8]   The ALJ stated that plaintiff is partially credible because the record does not support the severity of symptoms that she alleges.  [AR at 15.]

selectively choose evidence in the record that supports his conclusions); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)).

Third, the ALJ erred by rejecting plaintiff's treating physician's opinion on the basis that "the issue of disability is reserved to the Commissioner." [AR at 18.] While the ultimate determination of whether plaintiff is disabled is an issue reserved to the Commissioner, Social Security "rules provide that [the ALJ] must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *2. An ALJ must consider a treating physician's opinion on the ultimate issue of disability as he would consider any other opinion by a treating physician, and "if controverted, [it] can be rejected only with specific and legitimate reasons supported by substantial evidence in the record." Reddick, 157 F.3d at 725; see SSR 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

Fourth, the ALJ erred by discrediting Dr. Evans' opinion because "it is not clear that the doctor was familiar with the definition of 'disability' contained in the Social Security Act and regulations." [AR at 18, 193-96.] On a form for California state disability insurance, Dr. Evans opined that plaintiff is disabled. [See AR 193-96.] The ALJ may not disregard the treating physician's opinion solely because it was given in a state worker's compensation setting. See Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) ("the ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings."); see also Coria v. Heckler, 750 F.2d 245, 248 (3d Cir. 1984) ("[T]he ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the

1   first instance for the Social Security claim, unless there is some reasonable basis to believe a

2   particular report or finding is not entitled to comparable weight.")  Under the circumstances, the

3   Court does not find a reason, and defendant offers none, as to why the same reasoning should

4   not apply in this context.

5          Fifth, the ALJ erred by concluding that Dr. Evans' relationship with plaintiff was for too brief

6   a period of time.  Specifically, the ALJ concluded that Dr. Evans "did not have a longitudinal picture

7   of [plaintiff's] medical condition."  [AR at 18.]   As an initial matter, the record reflects that Dr.

8   Evans and NP Nguyen worked together[9] treating plaintiff at Arrowhead between September 1,

9   2009, and May 28, 2010.  [See, e.g., AR at 200-01 (treatment note, dated September 1, 2009,

10  signed by NP Nguyen), 199 (treatment note, dated September 16, 2009, signed by NP Nguyen),

11  198 (treatment note, dated October 16, 2009, signed by NP Nguyen), 213 (undated treatment note

12  signed by NP Nguyen), 194 (medical report dated March 8, 2010, signed by Dr. Evans), 195-96

13  (medical report dated March 26, 2010, signed by Dr. Evans), 202 (treatment note dated May 4,

14  2010, signed by NP Nguyen), 210 (treatment note dated May 28, 2010, signed by NP Nguyen).]

15  This Circuit has held that the medical opinions of physicians on a "treatment team" with a

16  sustained relationship with a plaintiff may be accorded treating physician status.  See ex rel.

17  Benton v. Barnhart, 331 F.3d 1030, 1041 (9th Cir. 2003) (requiring the ALJ to "explore" whether

18  a physician's treatment relationship, "individually and as a representative of a treatment team, was

19  consistent with accepted medical practice for the type of treatment required for [the plaintiff's]

20  medical condition").  Thus, the ALJ erred by failing to consider NP Nguyen's treatment of plaintiff

21  when determining the length and nature of Dr. Evans' relationship with plaintiff.  [AR at 15-18.]

22  In addition, Dr. Evans maintained a relationship with plaintiff for nearly seven months.[10]

23  Specifically, the record reflects that Dr. Evans completed a report on plaintiff's behalf on three

24

25        9   First, plaintiff testified on May 22, 2012, that Dr. Nguyen and Dr. Evans work together

26  at Arrowhead.  [AR at 42.]  Second, both NP Nguyen and Dr. Evans signed a form on plaintiff's
    behalf as her attending doctors.  [AR at 193.]

27

28        10  On a medical report dated March 26, 2010, Dr. Evans indicated that he had treated
    plaintiff since September 1, 2009.  [AR at 195-96.]

1  occasions. [See AR at 193-96.] The length of Dr. Evans' treatment of plaintiff enabled him to form

2  a longitudinal picture of plaintiff's impairments. See Thompson v. Astrue, 2011 WL 164323, at *8

3  (C.D. Cal. Jan. 19, 2011) (finding improper the ALJ's rejection of the treating physician's opinion

4  on the basis that the physician had treated plaintiff for only three months); Moore v. Astrue, 2009

5  WL 724056, at *7 (D.Colo. Mar. 18, 2009) (holding that the ALJ improperly rejected the treating

6  physician's opinion on the basis that she had only treated plaintiff for four months). Moreover, the

7  ALJ failed to provide any reason for assuming that Dr. Evans did not form a longitudinal picture

8  of plaintiff's impairments. See Thompson, 2011 WL 164323, at *8 (holding that the ALJ's rejection

9  of plaintiff's treating physician was improper because the ALJ did not provide a basis for assuming

10  that the physician did not form a longitudinal picture of the plaintiff's impairments).

11        Lastly, to the extent that the ALJ suggested that Dr. Evans' opinion in fact supported a

12  determination of nondisability, the Court disagrees. The ALJ noted that Dr. Evans opined that

13  plaintiff's disability would last for a total of only ten months, which would not satisfy the durational

14  requirement for disability under the Social Security Act.[11] [AR at 18.] As an initial matter, the form

15  that Dr. Evans signed instructed him to "make SOME 'estimate,'" "[e]ven if considerable question

16  exists" as to when plaintiff would be capable of performing her regular work.[12] [AR at 193-96

17  (emphasis in original).] Thus, Dr. Evans merely provided an "estimate" as to when plaintiff would

18  be able to resume her regular work, as he was instructed not to report that plaintiff's disability

19  would last for an indefinite duration. Further, Dr. Evans' predictions of when plaintiff could resume

20  her regular work were extended as their treatment relationship progressed. [AR at 193 (Dr. Evans

21  predicted that plaintiff could resume her regular work on March 1, 2010), 194 (on March 8, 2010,

22  Dr. Evans estimated that plaintiff could resume her regular work on June 1, 2010), 194-95 (on

23  _____

24        [11]   In a medical report dated March 26, 2010, Dr. Evans noted that plaintiff's disability
      commenced on September 1, 2009, and predicted that her disability would end by July 1, 2010.

25  [AR at 195-96.]

26        [12]   The form also reads: "APPROXIMATE date, based on your examination of patient, disability
      (if any) should end or has ended sufficiently to permit the patient to resume regular or customary

27  work. Even if considerable question exists, make SOME 'estimate.' This is a requirement of the
      code, and claim will be delayed if such date is not entered. 'Indefinite' or 'don't know' will not

28  suffice." [AR at 196 (emphasis in original).]

March 26, 2010, Dr. Evans estimated that plaintiff would be able to resume her regular work on July 1, 2010).] Moreover, the medical records indicate that plaintiff was receiving medical attention for her impairments beyond the twelve month period.  [AR at 240-41 (consultative note dated August 25, 2010, reporting that plaintiff has multilevel degenerative disk disease, mild bilateral neural foraminal narrowing at L5-S1, small posterior disk margin annular tear at L4-L5, and diffuse facet joint hypertrophy at L3-L4, L4-L5, and L5-S1), 239 (treatment note dated August 25, 2010, indicating that a lumbar spine x-ray revealed mild straightening which may be caused by muscle spasm), 238 (treatment note dated September 21, 2010, scheduling plaintiff to undergo lumbar medial branch block under fluoroscopy), 235 (surgical note dated September 23, 2010, reporting that plaintiff underwent medial branch block under fluoroscopic control).]   Because plaintiff continued to undergo treatment for a period that would satisfy the durational requirement, the ALJ had a duty to further develop the record if he believed the record was insufficient to evaluate the length of her impairments. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (holding that ALJ has a duty to resolve such ambiguity, and providing examples of steps ALJ may take in order to do so, including subpoenaing physicians, submitting further questions to physicians, or continuing the hearing in order to augment the record).

In sum, the ALJ failed to provide specific and legitimate reasons for rejecting plaintiff's treating physician's opinions.  As a result, the ALJ's decision on this issue is not supported by substantial evidence and remand is required.

**B.   LAY WITNESS TESTIMONY**

Plaintiff argues that the ALJ erred by rejecting the testimony of her daughter, Melonie J. Pina, regarding plaintiff's functional limitations.  [JS at 16; AR at 158-65.]

An ALJ may consider lay witness testimony to determine the severity of a claimant's impairments and how the impairments affect her ability to work. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen, 80 F.3d at 1288; 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Lay witnesses include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy.  20 C.F.R. §§ 404.1513(d)(4),

416.913(d)(4).   Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider.  See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); Smolen, 80 F.3d at 1289 (testimony from lay witnesses, who see the plaintiff on a daily basis and are often family members, is of particular value); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering . . .  this is particularly true of witnesses who view the claimant on a daily basis . . ."). The ALJ may discount the testimony of lay witnesses only for "reasons that are germane to each witness."  Dodrill, 12 F.3d at 919; Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999).

In a third party Function Report, Melonie Pina opined that her mother cannot stand or walk for more than "small periods at a time." [AR at 159.] She further indicated that plaintiff is unable to do house or yard work because of her pain. [AR at 160.] Ms. Pina stated that plaintiff is able to lift only five pounds, and can walk for only a couple of minutes. [AR at 163.] She further stated that bending, standing, reaching, kneeling, and squatting cause plaintiff "too much pain," and plaintiff's medicine affects her memory and understanding.  [Id.]

In his decision, the ALJ rejected Melonie Pina's testimony, stating that "[w]hile a layperson can offer an opinion on a diagnosis, the severity of [plaintiff's] symptoms, or the side effects of medications in relationship to [plaintiff's] ability to work, the opinion of a layperson is far less persuasive on those same issues than are the opinions of medical professionals as relied on herein." [AR at 16.] Additionally, the ALJ found that "the opinion of [plaintiff's] daughter is not an unbiased one because she has a familial motivation to support [plaintiff]." [Id.]  Finally, the ALJ found that, "[m]ost importantly, [plaintiff's daughter's] statements are not supported by the clinical or diagnostic medical evidence that is discussed elsewhere in this decision." [Id.]  Thus, the ALJ held that plaintiff's daughter's statements "are not credible to the extent her statements are inconsistent with the residual functional capacity assessment herein."  [Id.]

The ALJ's reasons for rejecting Melonie Pina's report are not germane reasons specific to her. First, the ALJ erred in concluding that her statements are less persuasive because she is not a medical professional.  [AR at 16.]  To the extent that the ALJ contends that Melonie Pina's

1   statements are couched in medical terms, the court finds that she mainly reported her own

2   observations of plaintiff's activities and functional limitations.  Specifically, Melonie Pina reported

3   that plaintiff "needs help putting on pants, socks, [and] shoes," plaintiff "drives only short

4   distances," and "she prepares small meals." [AR at 159-61.] Moreover, the fact that Melonie Pina

5   is not a medical professional is not a germane reason for rejecting her testimony.  Lay witnesses,

6   by definition, are not medical professionals, and the ALJ's reasoning would lead to a wholesale

7   dismissal of all lay witnesses.  "Disregard of this evidence violates the Secretary's regulation that

8   he will consider observations by non-medical sources as to how an impairment affects a claimant's

9   ability to work." Dodrill, 12 F.3d at 919 (quoting Sprague, 812 F.2d at 1232 (citing 20 C.F.R. §

10   404.1512 (e)(2))).

11          Moreover, it was improper for the ALJ to discount Melonie Pina's allegations on the ground

12   that she is biased "because she has a familial motivation to support [plaintiff]." [AR at 16.]  An ALJ

13   may not presume bias on the part of a claimant's family member simply because he or she is

14   related to the claimant.  See Regennitter, 166 F.3d at 1298 (ALJ improperly rejected lay witness

15   testimony of the plaintiff's mother on the basis of presumed bias); see also Smolen, 80 F.3d at

16   1289 (ALJ's rejection of the plaintiff's family members' testimony on the grounds that they were

17   "'understandably advocates, and biased' ... amounted to a wholesale dismissal of the testimony

18   of all the witnesses as a group and therefore does not qualify as a reason germane to each

19   individual who testified").  Similarly, the rejection of lay witness testimony on the ground that the

20   testifying witness lives with or supports the claimant, and therefore must be biased, is not a reason

21   germane to that witness.  See Johnson v. Astrue, 2008 WL 4553141, at *6 (C.D. Cal. Oct. 9, 2008)

22   ("The ALJ's reasoning that witnesses who live with or support a plaintiff are not credible for

23   reasons of bias cannot be considered legally proper, since the same rationale could be used to

24   reject lay witness testimony in almost every case.").  Finally, the ALJ did not point to, nor is the

25   Court aware of, any evidence that plaintiff's daughter expected to be reimbursed for her support

26   of plaintiff if plaintiff had received benefits.  Compare Howard v. Astrue, 2009 WL 385441, at *4

27   (C.D. Cal. Feb. 17, 2009) ("that plaintiff's family may have a financial interest in the outcome of

28   the case is ... not a sufficient reason to reject the statements of plaintiff's grandmother"), with

Meyer v. Astrue, 2010 WL 3211938, at **3-4 (W.D. Wash. Aug. 12, 2010) (distinguishing Howard and finding that ALJ's rejection of lay testimony from the plaintiff's mother and her partner was supported by substantial evidence where the plaintiff owed them both a significant sum of money and had promised to pay them both up to $5,000 in exchange for their testimony upon approval of his disability claim).

Finally, the ALJ improperly rejected Melonie Pina's statements on the basis that "her statements are not supported by the clinical or diagnostic medical evidence." [AR at 16.]  While inconsistency with the medical evidence may be a reason to reject lay witness testimony, substantial evidence does not support the ALJ's reliance on this reason.  The ALJ did not identify which of Melonie Pina's statements are unsupported by the medical evidence.  As such, this reason is not sufficiently specific to constitute a germane reason for rejecting her statements.  See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing Stout, 454 F.3d at 1054) ("If an [ALJ] disregards the testimony of a lay witness, the [ALJ] must provide reasons 'that are germane to each witness' . . . [and the reasons] must be specific").

In short, the ALJ's rejection of plaintiff's daughter's testimony is not supported by substantial evidence and remand is warranted on this claim.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007) ; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  See Benecke, 379 F.3d at 593-96.

1    Here, there are outstanding issues that must be resolved before a final determination can

2    be made.  However, in an effort to expedite these proceedings and to avoid any confusion or

3    misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

4    proceedings.  First, the ALJ on remand must reconsider the opinion of Dr. Evans.  [See AR at 193,

5    194, 195-96.] In assessing the medical opinion evidence of Dr. Evans, or any other physicians, the

6    ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any

7    portion of the opinion(s) that the ALJ rejects.  Next, the ALJ on remand shall reevaluate Melonie

8    Pina's Third Party Function Report.  Finally, if necessary, the ALJ shall reassess plaintiff's RFC and

9    determine, at step five,[13] with the assistance of a VE if necessary, whether plaintiff is capable of

10   performing other work existing in significant numbers in the regional and national economies.

### VII.

### CONCLUSION

   **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

   **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: July 28, 2014

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[13]   Nothing in this Order is intended to disturb the ALJ's step four finding that plaintiff is unable to perform her past relevant work.  [See AR at 18.]

19